## THATCHER ET AL. v. CRISMAN.

1. STATUTORY CONSTRUCTION—ROADS AND HIGHWAYS.
It was not intended by the amendatory acts of 1874 and 1877, relating
   to roads and highways, to validate or correct mistakes of or obviate
   errors committed by boards of county commissioners in establish-
   ing roads.

2. COVENANTS OF WARRANTY, BREACH OF.
A plaintiff may recover upon a breach of warranty when he proves the
   legal existence of a road upon the premises, and produces a deed
   containing a covenant against incumbrancers.

3. COLLATERAL ATTACK.
It seems that a stranger to the proceeding cannot impeach the action
   of a board of commissioners in laying out a road for matters dehors
   the record; but if upon an inspection of the record it appears that

the order was void, it may be attacked whenever it is used as an instrument of evidence or basis of recovery. Where the order of the board of county commissioners recites nothing, but rests for its validity upon a petition which upon its face shows a failure to observe the statute with respect to the number of petitioners, it is void.

4. EVIDENCE.

When a judgment or order has been put in evidence by the plaintiff as a basis of recovery, the defendant may introduce the other parts of the record to show its invalidity.

*Error to the District Court of Arapahoe County.*

Messrs. ROGERS, SHAFROTH & WALLING, for plaintiffs in error.

Mr. WILLIAM KNAPP, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

Obed Crisman was a grantee under a deed with full covenants, executed in November, 1888, by Sullivan and Thatcher. The property conveyed was lots 101 and 102 in an addition to Cottage Hill in Arapahoe county. It was unimproved, and neither grantors nor grantee had other than the constructive possession which the title may draw after it. Conceiving that there had been a breach of the covenants, Crisman brought the present suit, and stated five different causes of action. In three of them the breach was stated to consist of a ten years user by the public. This may be dismissed from consideration, since no proof was offered to support it. In the other two the plaintiff averred (to state it generally) a breach of the various covenants contained in the deed, other than the covenant against incumbrances. The breach laid was the establishment of a highway by the boards of county commissioners of Arapahoe and Jefferson counties in 1874. In making his proof of the proceedings of the Arapahoe county board, the plaintiff offered the report of the viewers and the order of the board. The order recited the report

and its recommendation for the payment of $62.50 to Mr. Zuloff for the right of way through his land. The county clerk was ordered to draw a warrant in favor of "Zuloff, or the owner," and he was directed to ascertain that person, and concluded with an order "that the road as located by the viewers upon the petition of Richards et al. should be declared a public road" from that date. The defendant strenuously objected to the procedure, and insisted the plaintiff was bound to produce all the papers connected with the matter in order to show jurisdiction in the county board to act in the premises. When it came to the proceedings in Jefferson county, the plaintiff offered the entire record, which included the various papers provided for by the statutes then in force. No objection was made to this record, but just how far it bears on the present controversy is not very clear. When the defendants came to make their proof, they offered the balance of the Arapahoe county record. The plaintiff objected to the proof, and the court excluded it, holding the order to be the only essential element of proof, and the balance inadmissible because it tended to controvert the validity of the order. The petition offered by the defendants must be assumed to be the one on which the order rested, since no other was produced. This petition was signed by only nine persons. It was filed in July, 1874, and followed in August by the appointment of viewers, who filed their report in the October ensuing, when the board made the order which has been stated. The plaintiff established the amount of land which was occupied by the road, the consideration which he paid for the conveyances, and the relative value of what was taken. Acting under the directions of the court, the jury found a verdict for Crisman for $170.69, to reverse which the defendants have sued out a writ of error and brought the case here.

The litigation involves several troublesome questions. One of the chief difficulties springs from the circumstance that the plaintiff failed to make some proof which, according to our view of the law, is indispensable. When the

action was begun the plaintiff rested his right to recover
upon the user by the public of the highway for a period of
upwards of ten years. He was compelled to abandon this
position because of statutory changes. On the present argu-
ment much reliance is placed on the legislation affecting
roads, and it is probably well to dispose of this matter before
proceeding with the main discussion. Ever since territorial
times there have been statutes providing for the establish-
ment and maintenance of public highways by the boards of
county commissioners of the various counties. With the
acts which established particular roads we have nothing to
do, but section 5 of the Revised Statutes of 1868 provided
that all roads should be considered highways which had been
or might be declared such by the legislative assembly or by
the board of a county, or which had been or should be so
used and traversed as that they would be regarded highways
under the common law. The statute further provided that
a board of county commissioners might act whenever a peti-
tion signed by ten householders of the county, and contain-
ing sundry and divers matters, should be presented to them.
It is not necessary in this discussion to state the requisite
contents of the petition, other than the requirement that it
must be signed by ten householders. Later, and in 1874,
the chapter of the Revised Statutes which has just been re-
ferred to was amended by striking out the provision respect-
ing the common law user and inserting a limitation period
of ten years. In 1877, the act was again amended, and the
ten year clause was eliminated. Both of these amendatory
acts contained the general statement that all roads should be
considered public highways which had been declared such
either by the legislature or by the board of county commis-
sioners. It is insisted that these acts serve to validate all
roads established by the various boards. It will be observed
there is substantially no difference between the act of 1868
and the amendatory acts of 1874 and 1877, save with respect
to the clause respecting the user by the public. In all other
details the legislation is precisely the same, and the amend-

ments were evidently adopted by the legislature not as validating acts to correct any mistakes of or obviate any errors committed by the boards in establishing roads. No such purpose is expressed in the act, nor do we conceive that any such inference can be legitimately drawn from their passage. This matter will therefore be dismissed from any further consideration.

The question recurs as to the plaintiff's remedy and the extent to which he must go in making out his case. Whether the pleading, as it stands, would permit the plaintiff to have judgment on proof of what might be adjudged a breach of the covenant against incumbrances, we need not decide. It is a somewhat difficult question, and since the case must go back for another trial, we would suggest that the complaint be so far amended as to contain a specific allegation of the breach of this covenant. Under the general weight of authority, the plaintiff may recover when he proves the legal existence of a road, and produces a deed containing a covenant against incumbrances, though he may not allege the other two, and recover on the strength of either, when his evidence only proves the existence of a highway. Rawle on Covenants of Title, pp. 80 and 101; Devlin on Deeds, secs. 888–890.

The chief difficulty flows from the lack of proof of one of two things, either one of which might sustain the judgment. We are not prepared to disagree with some of the authorities which, in an action based on the existence of a highway, hold the plaintiff makes out his case when he produces an order establishing it made by the proper authority. This seems to be the doctrine of some of the states, and we are not compelled to dissent therefrom. *Dumoss v. Francis*, 15 Ill. 543; *Galbraith v. Littiech*, 73 Ill. 209.

We have been referred to no case adjudging that no other part of the record is admissible, and that if the other part of the record be produced, and it shows the board acted without authority, such evidence may not be offered by the defendant in support of his contention that there has been no

breach of this covenant. The books are full of authorities to the effect that the proceedings of a board, even of such limited jurisdiction, are not open to collateral attack. The only trouble is to ascertain just what will constitute an attack of this description and what may not be open to that criticism. It seems to be true, in matters of this sort, as well as in the case of a judgment, that a stranger to the procedure may not impeach it for matters *dehors* the record. It seems, however, to be pretty generally conceded that any judgment which is void, or any void order made by a board, may be attacked. The only limitation which all the books agree to be a universal one respects the mode in which the attack shall be made, or the proof by which the character of the judgment or order may be determined. If, upon inspection of the record or order, it appears that the judgment is void, it is conceded the question may be raised whenever the record is used as an instrument of evidence or as a basis of recovery. Vanfleet on Collateral Attack, chap. 1, sec. 12, *et seq.*

It is wholly unnecessary to discuss the question of the extent to which presumptions may be indulged in with reference to the procedure of courts or bodies of limited jurisdiction. Had the petition been lost, or some of the papers in the chain been missing, then it might possibly have been necessary to consider how far we should go in presuming the board was duly authorized to act. Some other circumstances might be conceived where the doctrine of presumptions would aid the plaintiff. Had the other recited that on a petition duly signed, and on a report adequately made, the board considered the matter, and having considered it, ordered the road established, a legitimate inference might be drawn that the board acquired its jurisdiction in a statutory way, and was duly authorized to proceed. These questions, however, are purely matters of speculation, for the order itself recites nothing. Under this circumstance, the balance of the record must be legitimate evidence for the purpose of ascertaining what the board did, and on what basis it proceeded. We do

not conceive that the production of the record as an entirety constitutes a collateral attack in the language of the books, even though portions of the record may be produced by the plaintiff and the balance may be offered by the defendant. The evidence would seem to be entirely legitimate, and to give the defendant the right to furnish anything else found in the record which may show that the board lacked authority to proceed. The authorities are undoubtedly divided on this question, though the diversity springs, in our judgment, more largely from the neglect on the part of the courts to limit and distinguish the case immediately decided from the others, and to confine their judgment to the exact issue involved in the particular suit. The whole subject is very exhaustively reviewed in Lewis on Eminent Domain, chap. 14.

Disregarding any apparent exceptions,—and the exceptions are more apparent than real,—it may be safely stated that to authorize a board of limited jurisdiction and authority to proceed, a statutory petition must be presented. By this we mean there must be a petition signed by the requisite number of people, though whether the petition itself must in all other respects be in exact conformity to the statute, we do not determine, since the cases are not in harmony on this matter. They do, however, unite on the proposition that a petition must be filed, though doubtless some of them go so far as to hold if the order recites the fact of the petition the matter may not be otherwise questioned. The present case is not brought at all within the scope of these conflicting authorities. It is a naked case of an order reciting nothing, but resting for its validity upon a petition which on its face shows a failure to observe the statute. The facts in the case and the inspection of the record enable us to decide whether the plea of *nul tiel record* has been sustained. Since it was plainly settled by the record that the board was without jurisdiction to establish a road, we conclude its order was void, and a lawful highway has not been proven.

There is possibly enough in the order, if sufficiently supplemented by other proof, to justify the conclusion that,

even though there may have been a jurisdictional defect in the proceedings, it was cured by the acts of the parties, and the road can be taken to be a duly established public highway. The evidence is not sufficient to enable us to pass on this question. There are one or two authorities in this state which furnish a basis for the suggestion. *Denver City I. & W. Co. v. Middaugh,* 12 Colo. 434; *Central Railroad Co. v. Allen,* 13 Colo. 229.

The order recites the finding of the viewers as to the value of the land taken, and states that Zuloff was the owner. The clerk is ordered to draw a warrant for the damages, and it may be an examination of the record will disclose the fact of Zuloff's ownership when the order was made, and that he accepted the warrant in satisfaction of his claim of title. The two authorities cited seem to indicate such an acceptance would cure all the irregularities and defects in the proceedings, estop the owner from any claim of title, and it might, if the road is shown to have been devoted to public use, be operative against the grantees. This matter is suggested by the arguments and by the record, and while making these concessions, we do not wish to be understood as directly deciding them until the evidence on the subject is produced, and the matter comes up for discussion on this question. We simply say these things may be true, but we do not care at this time to consider or determine them.

For the error which the court committed in excluding the testimony offered by the defendants, the case must be reversed. The court below will permit the plaintiff to amend his pleading in such manner as he may be advised, and to grant a similar privilege to the defendants by way of amendments to their answer.

*Reversed.*